May it please the Court, my name is Gordon Gray and I represent ZW USA, Inc., Plaintiff, Appellant, and Cross-Appellee in this case. This District Court erred by repeatedly drawing inferences against ZW on genuine issues of fact and by considering clearly inadmissible evidence in support of PWD's motion for summary judgment. Combine these errors to deprive ZW of its right to have a jury act as a finder of fact on its case. The District Court should be reversed and the case remanded for trial. First, the District Court erred by repeatedly drawing inferences against ZW on genuine issues of fact on the issue of likelihood of confusion. First of these was the District Court found that PWD's housemark, that's bag spot, prevents confusion amongst consumers. However, this goes against clear Supreme Court authority that housemarks do not alleviate confusion. In fact, they enhance confusion. In fact, there's a string of cases from the Menendez v. Holt case in 1888 all the way up through Eighth Circuit cases. Now, opposing counsel has cited a number of cases that says housemarks can be used to prevent confusion. Even if that is the case, this distinction in authority, this split of authority shows that this is an issue of fact for the jury to determine. What exactly did the housemark do or not do? And that was something that the District Court inferred against ZW improperly. It can't be that just because there's case law that's different that this is never proper for summary judgment, can it? I think in this case, this is never proper for summary judgment when it's a housemark with no other evidence showing that, for example, consumers say, we always look at bag spot or some other kind of testimony. It's just the court saying, because there's a housemark, there cannot be a likelihood of confusion, that it mitigates confusion. And that would be an inference against ZW that's improper on summary judgment. In this case, there's case law that says that that causes confusion and that it enhances confusion. I guess I didn't remember the District Court saying because, simply because of the housemark, there's no confusion. Well, it's one of a number of factors that are considered unlikely to confusion. There's six factors total. One of them, the court said, this clearly goes in PWD's favor because of the housemark. I guess my question is, are you saying that the District Court didn't analyze what role the housemark played in this confusion analysis and just simply said there is one next step? Correct. And then on top of that, even if there is any kind of analysis that goes on, it's improper. That's the finder of facts job. So the next point, the next factor that the District Court inferred against ZW was the sight, sound, and meaning of the marks. The District Court said that one poll and one poll are two distinct auditory in sight, auditory by sight and by meaning, and that there is no expert testimony from an audiologist or some other kind of expert to say that these are similar marks. However, juries routinely consider the sight, sound, and meaning of marks. They don't need an expert witness to determine. So to say that these two marks that differ by only a hyphen and one letter are somehow markedly different, again, that's an inference against ZW that was not proper on summary judgment. The next factor that was inferred against ZW was the District Court failed to consider the substantial evidence of PWD's intent to cause confusion, that they actually took customers from ZW, a number of customers. Now, the District Court said, well, there was no evidence that these customers made this decision to buy from PWD instead of ZW because they were confused. However, that's not evidence that is ZW's to present. In fact, the Mishwaka rubber case specifically, which is a Supreme Court case, specifically says that that is the defendant's burden and not the plaintiff's burden to bring forth that type of evidence and that it's on the defendant to explain why these consumers switched. Also, the substantial number of other facts regarding how the business was started, that these are the plaintiff and defendant are run by brothers and by a brother and a sister. So she clearly the PWD clearly knew about ZW and its marks. These are not these are substantial facts that a jury could have considered on the issue of intent. But didn't the District Court sort of see that as an intent to compete? Well, that was an inference that the District Court drew against ZW. In this case, the Mishwaka rubber case says it's up to the defendant to show that this was some other reason why this occurred, that there's bringing forth of bring forth the witnesses, bring forth the customers that they took to say, well, we bought it because of defendants reputation or the quality of goods or price or some other reason besides confusion. Lastly, the District Court ruled that one poll is inherently an inherently distinctive mark, but then found that it was not conceptually strong or commercially strong as a mark. This is a clear error because those are inherently distinct. Those positions are inapposite. If a mark is inherently distinctive, then it is conceptually strong. Well, does that have to be? I mean, there's two steps to the analysis, right? So is it is it distinct for purposes of validity, right? Whether it's a valid mark. But then the next step is sort of its strength. You know, maybe it's valid, but the conceptually not strong as an example. So it doesn't seem to me that you can't sort of just cut out that second step of conceptual strength simply because you found a valid trademark, can you? For conceptual strength, validity does indicate conceptual strength. It may indicate, but I guess what I'm trying to get at here is that it can't. You can't just because you found it valid. You can't just sort of cut out the analysis of how conceptually strong it is. Well, in this case, the way the court found that it was valid means that it conceptually strong. What I mean by that is if they mark on the scope of, for example, arbitrary and fanciful marks being the most strong and then merely descriptive with secondary meaning being the weak marks on the scope of valid marks. That means that if a mark is merely descriptive, but it has secondary meaning, then it's a weak mark. And then you consider the commercial strength, secondary meaning. What do consumers think of this mark? What kind of sales are there? What kind of ads are there? What do consumer testimony or surveys say? However, in this case, the court found that it was valid and not merely descriptive with secondary meaning. And so that means that it would be conceptually strong. And then the court turned around and decided that it was conceptually weak. Is that case law that that's just true? You say, well, if it's if it does reach the higher level of validity, it's by definition conceptually stronger. Or is that just your argument in this particular case? I don't know of any case that says that when a mark is suggestive, as this case at minimum found, that when a mark is suggestive, that it is then somehow conceptually weak. There might be some kind of commercial weakness in the second part of the discussion. But I don't know of any case that says that a suggestive mark is somehow conceptual. But it remains sort of a factual determination. Again, that's a factual determination. That's a fact that should have been inferred in ZW's favor on summary judgment. Then the district court found that the the mark was commercially weak. There was no testimony or evidence against what was presented by ZW. And it was undisputed regarding ZW sales and advertising evidence in the case. Now, the district court didn't think much of the advertising evidence is that persuasive. It seemed I understand the district court discounted it and said that it was not enough. However, that's, again, an issue for the finder of fact. In this case, the court said, well, there should have been some kind of comparison evidence or how much is in the marketplace or, you know, what does the impact mean? And that kind of impact evidence is basically saying that circumstantial evidence is not enough. And the Heartland Bank case in the Eighth Circuit specifically says that the plaintiff does not have to come forward with that type of evidence, that circumstantial evidence is enough for a jury to infer some kind of commercial strength from the advertising or from the sales or the length of use as well. That's one of the issues that the other side has raised is that somehow because PWD was using their mark at the same time as ZW, that somehow because it was an exclusive use. However, the trademark office specifically says that use does not have to be exclusive, just substantially exclusive. Counselor, you're within your rebuttal. Yes, I'm within my rebuttal time, so I'll step back. Thank you. Mr. Brophy? May it please the court. I think it's important in this case to step back and look at this at a high level. Obviously, a lot of the briefing deals with the likelihood of confusion factors, but as Your Honors will appreciate from our cross-appeal, there are also a number of validity issues that are being addressed as well, and I think all of that should be put into context. And I think the proper place to start for that context is a Supreme Court decision in the KP Permanent case, and I'd like to just read an excerpt from that very briefly. It said, The Lanham Act does not deprive commercial speakers of the ordinary utility of descriptive words. If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well-known descriptive phrase. Essentially what that means in this case is you can't adopt a mark that is very close to traditional English language and then assume that it has a broad scope of coverage such that you stop others in the industry from using the commercial phrase to describe their products. Now, there are a number of mechanisms under the trademark law to enforce that policy. We've identified a number of them in our briefing. Essentially, they run the gamut from finding the mark to be either generic or descriptive, in which case the marks are invalid because they describe a class of products or describe an intrinsic characteristic of the product, both of which we contend exist here. Alternatively, you can find that there was no actual trademark use here because using the phrase one pull to describe a product that can be dispensed with one pull is a descriptive use, not a trademark use. We're describing an intrinsic characteristic of a product. We're not using it as a designator of source or origin, and therefore it's not a trademark use. That would be an alternate ground for affirmance here because that would be essentially a finding of non-infringement. Of course, the last way to come to this conclusion is to simply analyze the likelihood of confusion factors and determine that because of the type of mark, because it's very close to general commercial language, a descriptive term, that it has a narrow scope and therefore is not entitled to encompass use of that phrase in its normal use. Any one of those panoply of options is available to this court to resolve this issue, but at its core, fundamentally, the issue here is you can't take a mark and use it to stop competitors in the industry from describing how their products work or what category or class that product falls into. That's really what is at issue here, and as I've said, there are a number of ways for your honors to bring that result to fruition. Which one of these companies entered the market first? ZW entered the market first, your honor. They were on the market. I don't have the exact timeline, but years before my client, PWD, was in the market. So what I'd like to do, unless your honors have questions, which I'm obviously happy to address. Is there any market research in the record to indicate how many competitors there are or the extent of competition in this particular area? There is no market evidence of that kind. I would say the only thing that touches on market evidence or could be considered market evidence would be the evidence that PWD entered in the summary judgment record regarding the number of participants in this market who used one pull to describe their various products. There are a wide variety of companies that use one pull, not in a trademark sense, not to designate the origin or source of their goods, but merely to describe the fact that when you pull a bag off a roll or off a hanger, like you do at Chinooks, you get one bag, one bag, one pull. If you look at the, and that evidence is objected to, obviously, by ZW. Correct, your honor. They're saying it was improperly allowed into the record and considered because of, well, for a number of foundational reasons. But if we look at that evidence, it seems like there's a whole bunch of people looking at bag rolls, that they call them single pull, one pull, that's just what they're doing. Now, ZW would have us believe or have us take as a proposition that somehow there is a distinctive difference between hook bags or what they call wicked bags and roll bags. Would you agree with that or disagree with that? As it relates to the structural makeup of the bag, absolutely. Some of them come on a roll and some of them are on a hanger, such that when you pull one off, the next one opens and avails itself like at Chinooks. That does not, however, provide any relevant distinction as it relates to the use of the phrase one pull in its descriptive sense to describe products. Both of those products, structurally different in the way that they operate, both provide the feature of one bag with one pull. And this isn't some kind of a patent claim where we'd care about the structural difference. What we're looking at here is the use of a mark. That's exactly right, Your Honor. That's exactly right. And I think Your Honor may recall from the briefing that there was a declaration submitted by ZW's principal drawing distinctions between these various structural configurations and essentially trying to wave off this evidence and say you should ignore this evidence because it relates to a different type of structural bag. But that misses the point. The point of that evidence is that those in the industry, those in this marketplace, use the phrase one pull in its descriptive sense at least to describe the characteristic of the products that they are selling. That's what matters. That's what matters. Now, we go a step further, and we say that this is, in addition to being descriptive, it's also generic. The reason it's generic is because just as Your Honor Erickson described the certain category as a roll bag, so too can the product be described as a one-pull bag. And there's evidence in the record demonstrating that that is a category or class of products. Under the trademark law, a generic phrase is one that describes a class or category of products. And if you look at our briefing, we have a number of examples of, number one, uses in that way. Joint Appendix 140 through 144 provide PWD's own use. Joint Appendix 553 through 554 describe the appellant's use. But then we also identify competitor use. I hesitate to use the phrase poopy-doo in appellate court, but if you look at Joint Appendix 347, that's an example of competitors using one pull to describe a class of products. There is a litany of case law saying those types of uses are generic uses. One example would be the American Aloe Corporation case from the Seventh Circuit, where the word A-L-O was used to describe aloe products, and that A-L-O was determined to be generic because you can't use a word like A-L-O to describe a class of products which have aloe in them. So that's our generic argument, and I think that's a foundational issue here. But if we step away from genericness for a moment and talk about descriptiveness, there's another whole litany of cases that say, and it's shocking, I cannot believe this case exists, but that say you can't take two words, two foundational words that are English language descriptive terms, chop the last letter off, and combine them to create some fanciful word, some fanciful mark. That's not the way it works. Case law from the Eighth Circuit says you have to look at those two foundational words and determine whether those words, when they're concatenated, do something magical. And if you look at the Flavor Corp case, that example there dealt with a product that was a pest lure, L-U-R-E. In that case, the mark owner took the second word lure, dropped the E, and made one word out of it. Still called pest lure, that's all they did to it. That is exactly the same thing that we're dealing with. O-N-E-P-U-L, drop the last L, put them together. So where exactly did, you're talking about the validity stage, right? Correct. So where did the district court, in your view, go wrong on that part of it? I hesitate to say that Carol Jackson was wrong. But that's what you're saying, correct? You're right. Essentially, I think the error that she made was to distinguish or to discretize the question of validity from the question of infringement. And if you look at her order, you find that she determined, when looking at the likelihood of confusion factors, that one pull is a commonly used phrase that is descriptive in nature. And she used that to narrow the scope of the trademark rights. And there's a line of cases saying that that's perfectly appropriate. That's one way to resolve the case. But alternatively, and I think possibly the more appropriate way to resolve the case, is to determine that for the same reasons as she described there with regard to the likelihood of confusion infringement test, so too does that demonstrate at least that this is a descriptive term. If we find it's a descriptive term, do we have to remand it for secondary meaning analysis, since Judge Jackson said that she had not conducted a secondary meaning analysis? I believe the answer to that is no, Your Honor. You're allowed to decide any issue that is before you based on the facts as they exist. And there is record evidence regarding competitor use and the party's use in at least a descriptive sense. And, therefore, you'd be able to find invalidity on that basis. So I've spoken briefly, and I realize I'm in my last five minutes, but I've spoken briefly about the generic nature of this term as well as the descriptive nature of this term. One other thing I'd like to address is the non-trademark use of this term. And there is, I'll say, a growing trend, specifically in the Sixth Circuit, to dispatch with cases like these at an early stage, Rule 12 stage, because using a quick look, they determine that there simply isn't a trademark use here. No need to get into a complicated likelihood of confusion factor analysis. Let's look at whether this mark is being used as a designator of origin or whether it's being used as a description of the intrinsic qualities of the product. And in those cases, those latter cases, courts, particularly in the Sixth Circuit, although there is a case here as well, have found that you simply don't have to engage in likelihood of confusion. The Lanham Act isn't even triggered because there is no trademark use. And without any use in commerce of a trademark sense as a designation of origin, there's simply no reason to proceed with the likelihood of confusion analysis. There's no use of a mark to determine whether it's confusingly similar to. And I believe that's a third basis, that's an alternate ground for affirmance here, is to find that the use here, and the use by the entire industry, including PWD, is in a descriptive sense, the bag dispenses with one pull. We're not using it to designate source, as Judge Jackson determined very clearly, we use bag spot as the determiner of source. We put bag spot on our bags. We put the bag spot website on our bags. The word one pull, whether it's O-N-E-P-U-L-L, two words or one, does not appear on our products. We do not use it as a designator of source. We use it just like the rest of the industry as a descriptor of the intrinsic characteristics of our product. So with that, I'm happy to address any questions or issues that you may have, Your Honors. Otherwise, I realize it's late in the morning. I'm happy to cede the rest of my time. I see none. Thank you very much. It's an honor to be in front of you on your first day. Mr. Gray? To respond to PWD's counsel on that somehow the use of one pull stops competitors from using commercial terms, there are plenty of commercial terms available to competitors to use besides my client's registered trademark. Manufacturer calls these bags wicked or header bags. PWD's own sales or actually one of only two employees in the company, Jeff Springer, says that there are only three companies that use the terms, EW, PWD, and then another company that my client, Anthony Gillis, disputes even uses the term. Then the Exhibit G that PWD cites as being industry evidence is only 18 pages of documents. Those are six websites. And of those six websites, one of them is ZW's use on a mark. Three of them refer to single pull and not one pull. And the others are broken down with roll bags. And then, well, two are roll bags, three use the term single pull, and the other one is ZW's products. So I don't think this is a broad range of industry evidence. And more importantly, there's no indicator on how this impacts consumers because descriptiveness is at root is what do consumers believe. Do they believe this is a descriptive term or do they believe this is a source identifier? Again, that's an issue for the finder of fact. In this case, to say that somehow PWD is not using the trademark, that ZW's registered trademark is just not supported by the record. They use the term constantly throughout their website, capitalized. And in their own founders' words, capitalized and bold used to draw notice. And that's exactly what a trademark is for, is to draw the notice of the consumer so that they buy the goods. That's it. And then they use it along with the ZW's own name, Zero Waste. They use that as a keyword to draw people to a Google ad where the first words on the ad are one pull bags. So this is clearly a trademark use, even though they're not marking their bags. They are certainly using the trademark, the registered trademark in their ads and on their websites, which is the main point of consumer contact. Once those bags are purchased by these municipal or other institutions, when they're being used by people to pick up after their dogs or pets, I don't think anybody's perusing those bags terribly carefully. So I think that clearly this is a trademark use. This is something that's governed by the Lanham Act and certainly something that. And assuming it is, how do you distinguish the one pull in this case from the examples that opposing counsel gave? It's one pull without the extra L. It's just a modification of two words by eliminating one of the letters. How is this different than some of the cases that have said, you know, that's just not enough to give it trademark status? Well, I think one is it's important to understand the effect on consumers, what's available to consumers and what's available to competitors to use. And putting one pull together and using the term is merely suggestive. It doesn't say directly, and the district court stated that as well in her opinion, that the consumer does not immediately know what the ingredient or what the product is by just hearing the term one pull. In hindsight now, you know, we've discussed a number of times how these bags are used, but manufacturers don't use that term. Many competitors don't use this term. They call them wicket or header bags or roll bags. They use all these other terms besides one pull. And again, PWD's own head of sales says only three companies use this term, one pull. So I don't think it's immediately a descriptive term that bars other people from using regular English language. So in summation, I believe there was a number of factual issues that the court improperly took from the jury and drew inferences on summary judgment improperly, and the case should be remanded for jury trial. Thank you. Thank you, Mr. Gray. Thank you also, Mr. Brophy. Court, thank you both for the engagement with the court this morning and this oral argument. We'll take the case under advisement and render decision in due course. Thank you.